UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
DENISE CRUZ,                                          Civil Action No.:

                                    Plaintiffs,

            -against-                                    **COMPLAINT**

LEGENDS HOSPITALITY, LLC, JOHNNY SHEK,
and MICHAEL FOSTER,                                     **JURY TRIAL REQUESTED**

                                    Defendants.
-------------------------------------------------------------------------X

        Plaintiff DENISE CRUZ ("Plaintiff"), by her attorneys, Law Offices of Yale Pollack, P.C.,

as and for her Complaint against Defendants LEGENDS HOSPITALITY, LLC, JOHNNY SHEK,

and MICHAEL FOSTER (collectively "Defendants"), alleges as follows:

                              **NATURE OF ACTION**

        1.      This lawsuit seeks to recover wages for current and former employees of the

Legends working at Yankee Stadium in Bronx, New York.  For more than ten years, Defendant

Legends operated its business at the expense of hard-working employees – servers, bartenders,

hosts, and others – who were not paid properly.

        2.      This is an action brought by Plaintiff for violations of the Fair Labor Standards

Act, as amended, 29 U.S.C. §§ 201, *et seq*. ("FLSA"), and the New York Labor Law ("NYLL"),

arising from Defendants' failure to pay Plaintiff her earned compensation, unpaid wages, retaliatory

conduct, and other violations of the law.

        3.      Due to violations of the FLSA, Plaintiff is entitled to recover from the Defendants:

(1) unpaid wages, including misappropriated tips, overtime pay and other pay Plaintiff was entitled

that she did not receive; (2) liquidated damages; (3) prejudgment and post-judgment interest; and,

(4) attorneys' fees and costs.

4.      Due to violations of the NYLL, Plaintiff is entitled to recover from the Defendants: (1) unpaid wages, including misappropriated tips, overtime pay and other pay Plaintiff was entitled that she did not receive; (2) liquidated damages and civil penalties pursuant to the NYLL and the New York State Wage Theft Prevention Act; (3) pre-judgment and post-judgment interest; and (4) attorneys' fees and costs.

5.      Additionally, Plaintiff brings claims for retaliation pursuant to the FLSA and/or the NYLL, for which she is entitled to economic damages, emotional distress damages, attorneys' fees and costs.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because the conduct making up the basis of the complaint took place in this judicial district and Defendants conducted business and reside in this district. Further, Plaintiff and similarly situated employees' claims arise out of or relate to the Defendants' minimum contacts with the forum state.

## PARTIES

8.      Plaintiff is an individual who, at all relevant times, resides in the State of New York, County of the Bronx.

9.      At all relevant times, the work performed by Plaintiff was directly essential to the club, restaurant, and bar businesses operated by Defendants.

10.     Upon information and belief, Defendant, Legends Hospitality LLC ("Legends") is a foreign limited liability company with its principal place of business located at 61 Broadway

2

within the city, county, and state of New York.

11.     At all relevant times, Legends operated at 1 E 161st St, Bronx, NY 10451 ("Yankee Stadium"), and was a business through which Defendants and/or corporate entities, continuously owned and operated a restaurant and bar which served food and drink to the public.

12.     Legends Suite Club and Legends Champions Club are a "restaurant" within Yankee Stadium and within the meaning of the NYLL, and was, and continues to be, an "enterprise engaged in commerce" within the meaning of the FLSA.

13.     Upon information and belief, Defendant Johnny Shek ("Shek") is an individual residing within the State of New York, County of Queens.

14.     A t all times relevant, Shek was and is the Manager of Legends Suite Club and had direct supervisory authority over Plaintiff and similarly situated employees.

15.     Upon information and belief, Shek exercises functional control over the business and financial operations of Legends Suite Club and Legends Champions Club, creates business policies, and has the power to hire and fire employees, supervised and controlled employee schedules and conditions of employment, determined the rate and method of payment for relevant employees and/or employee salary bands or categories, including Plaintiff's, and maintained and/or managed employee records, including Plaintiff.

16.     At all times, employees of Legends Suite Club and Legends Champions Club, including Plaintiff, could complain to Shek directly regarding the terms and conditions of their employment.

17.     Defendant Shek is a supervisor and manager of Legends Suite Club and Legends Champions Club, who actively participated, and continues to actively participate in the day-to-day operations of Legends Suite Club and acted willfully and intentionally and is an employer pursuant

to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL § 2 and the Regulations thereunder, and is jointly and severally liable with Legends Suite Club.

18.     Shek exercised sufficient control over Legends Suite Club's and Legends Champions Club's day-to-day operations as to be considered an employer of the Plaintiff and others similarly situated under the FLSA and NYLL.

19.     Upon information and belief, Defendant Michale Foster ("Foster") is an individual residing within the State of New York.

20.     At all times relevant, Foster was an Assistant General Manager for Premium Services at Legends Suite Club and Legends Champions Club and had direct supervisory authority over Plaintiff and others similarly situated employees.

21.     Upon information and belief, Foster exercises functional control over the business and financial operations of Legends Suite Club and Legends Champions Club and had the power to hire and fire employees, supervised and controlled employee schedules and conditions of employment, determined the rate and method of payment for relevant employees and/or employee salary bands or categories, including Plaintiff's, and maintained and/or managed employee records, including Plaintiff's.

22.     At all times, employees of Legends Suite Club and Legends Champions Club, including Plaintiff, could complain to Foster directly regarding the terms and conditions of their employment.

23.     Foster is the Assistant General Manager, Premium Services of Legends Suite Club and Legends Champions Club and who actively participated, and continues to actively participate in the day-to-day operations of Legends Club Suite, and acted willfully and intentionally and is an

employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL § 2 and the Regulations thereunder, and is jointly and severally liable with Legends Club Suite.

24.    Defendants exercised control oversite and direction over the terms and conditions of Plaintiff's, and similarly situated employees' working conditions and employment including, but not limited to, the power to: (i) hire, fire and discipline employees, (ii) determine rates and methods of pay, timekeeping and payroll, (iii) determine work schedules, (iv) supervise and control work of the employees, and (v) otherwise affect the quality of the employees' employment and employment practices.

25.    At all relevant times, Defendants were an "employer" and/or "covered employer" as defined by all relevant statutes including but not limited to the FLSA and NYLL.

26.    At all relevant times, Plaintiffs were an "employee" and/or "covered employee" of Defendants under all relevant statutes, including, but not limited to, the definitions of the term under the FLSA and NYLL.

27.    Defendants knowingly and willfully operated their business with a policy and practice of not paying either the proper FLSA wage or the proper New York State wage to Plaintiff and other similarly situated employees.

28.    Defendants knowingly and willfully operated their business with a policy and practice of not paying Plaintiff and other similarly situated employees either the FLSA overtime rate (of time and one-half), or the New York State overtime rate (of time and one-half), in violation of the FLSA and New York Labor Law and the supporting federal and New York State Department of Labor Regulations.

29.    Defendants engaged in widespread, systematic and significant violations of Federal

and New York State wage and hour statutes and implementing regulations. Plaintiffs have satisfied all conditions precedent to the institution of this action, or such conditions have been waived.

30.     Plaintiffs have satisfied all conditions precedent to the institution of this action, or such conditions have been waived.

## FACTUAL ALLEGATIONS

**A.     Plaintiff's Employment with Legends**

31.     Plaintiff began working for Legends in February of 2009 as a bartender.

32.     Since the beginning of her employment Plaintiff has been a member of the Unite Here Local 100 Union ("Local 100").

33.     In addition to the traditional benefits that being a member entails, Local 100 also has a seniority system which establishes priority of senior members of the Union for numerous things.

34.     By way of example, pursuant to the Collective Bargaining Agreement between Local 100 and Legends, senior employees of Local 100 receive priority when the schedule for Ticketed Event days is being created.

35.     Working these ticketed events came with numerous perks such as an attendance bonus, and significantly more tips. Seniority status also determines the priority of selecting employees to lay off during layoffs, scheduling employees who worked overtime and non-ticketed events.

36.     Pursuant to the Agreement between Legends and Local 100, while the union was responsible for providing the initial seniority classification for all employees at the outset of the agreement, any changes to an employee's seniority status for reasons such as firing demotion or otherwise were delegated to Legends, but they still needed to inform the union of any such changes.

37.    Accordingly, Plaintiff who worked at Legends since 2014 and was one of the longest tenured bartenders working for Defendants, was classified at a "Seniority 1" level, the highest seniority an employee could have.

**B.    Plaintiff Discovered that Her Seniority Level Had Been Unlawfully Revoked and She Made Protected Complaints**

38.    In or around November of 2017, Plaintiff was scheduled to work a shift.

39.    When Plaintiff arrived at work, she discovered that she had been scheduled to work with another employee who had physically assaulted her in the past when they worked together.

40.    Concerned for her physical safety Plaintiff informed her manager Richard MacDonald ("MacDonald") of her concerns.

41.    During this conversation MacDonald wrongly informed Plaintiff that the other employee had more seniority than her and thus could not be removed from the shift.

42.    Pursuant to the CBA between Legends and Local 100, the list outlining the seniority status of employees can be accessed upon request by employees.

43.    Accordingly, Plaintiff was well aware of the fact that the other employee was classified as a "Level 4" employee.

44.    This was understandably confusing to Plaintiff as not only was she certain of the fact that she had been working for Defendants longer than the other employee but also because during the previous year, Plaintiff had received a copy of the seniority list from her previous manager which clearly showed that Delacruz's seniority level was listed as 4, while Plaintiff's was listed as 1.

45.    As a result, Plaintiff complained of what she believed to be an illegal revocation of her Seniority in retaliation for her workplace complaint.

46.    Plaintiff began corresponding with her union in attempts to have her wrongful

demotion in the form of an alteration to her seniority status reinstated.

47.    During 2018 and 2019, Defendants, in continued retaliation, refused to correct the wrongful demotion.

48.    While Plaintiff was in discussion with both the union and Legends in attempts to have her seniority status reinstated, Plaintiff began to notice an unusual influx of secret shoppers, which constituted further adverse employment actions.

49.    Secret shoppers are independent contractors who are hired by Legends to evaluate customer service, product quality, and store cleanliness; they can usually be spotted based on the detailed questions they may ask, and intense scrutiny of shared areas such as restrooms.

50.    Other employees who did not engage in protected activity were not subject to this excessive surveillance and monitoring.

51.    In 2020, Legends laid off all of their employees due to COVID-19.

52.    In 2021, Legends began bringing back their employees at a reduced rate.

53.    Because Legends could only bring back half of the workforce, the employees who were brought back were determined by seniority status.

54.    It would naturally follow that Plaintiff, as one of the most senior employees at Legends, would be within one of the first groups to be brought back.

55.    Accordingly, when Legends began sending out welcome-back letters, Plaintiff eagerly awaited hers.

56.    Plaintiff did not receive any such letter and was not asked to come back to work until Legends brought back the entire workforce, an example of the continued retaliation she experienced as a result of her ongoing complaints regarding her wrongful demotion.

57.    During this time period, Plaintiff continued to complain to the Union and Legends

8

regarding her seniority status.

58. On May 7, 2021, David Katz, form General Manager Premium Food & Beverage for Legends, sent a letter stating that: "[Plaintiff] was under my employe as a premium bartender during my tenure at Yankee Stadium. She was employed in good standing. It is my opinion from the knowledge and paperwork that I've seen that [Plaintiff] should hold the #1 seniority position in the 'Champions Club.'"

59. On or around June 4, 2021, Plaintiff received notification from Brian Pasquarelli, Legends' Regional Human Resources Director, that her seniority status had been supposedly "restored" and that she had been placed back in category one (1) on the seniority list.

60. As such, Plaintiff should have once again started being scheduled for all of her shifts, or, in other words, have first priority for many of the most lucrative opportunities and events hosted at Yankee Stadium.

61. However, this was not the case as Plaintiff still was not scheduled for many of the games she should have been.

C. **Plaintiff Continued to Complain and the Retaliation Continued**

62. Ms. Cruz continued to make complaints regarding her scheduling.

63. In or around October of 2021 Plaintiff emailed James Callahan ("Callahan"), her then manager at Legends and inquired about why she had not been scheduled for games during the remainder of the season.

64. Plaintiff's email did not receive a response.

65. On or around April 17, 2022, Plaintiff emailed Callahan again as she had still was not being scheduled for soccer games.

66. Plaintiff, again, did not receive a response.

9

67. On or around May 5, 2022, Plaintiff emailed Jaime Avila, Plaintiff's Union Representative, regarding the same issue. Once again, she was brushed off.

68. During this time period, Plaintiff also made numerous complaints regarding not being paid wages that she had lawfully earned.

69. By way of example on September 22, 2022, Plaintiff emailed Foster, the Director of Premium Services, informing him that she had not been paid for some of the tips that she had earned. This email did not receive a response.

70. On May 8, 2023, Plaintiff emailed Foster again this time informing him that although she had been arriving to work at 3:00 p.m., as per her managers' instructions, the schedule did not reflect her start time until around 3:30 p.m. meaning she had not been paid for thirty (30) minutes each shift for months.

71. Plaintiff emailed Foster again regarding the same on April 23, 2024, but once again this email did not receive a response.

72. Plaintiff also emailed Shek regarding the same issue but again she did not receive a response.

**D. The Adverse Employment Actions Continued**

73. Over the course of the next few months, Plaintiff continued to make protected complaints regarding the unlawful conduct to which she has been subjected to.

74. On April 20, 2023, Plaintiff was almost physically assaulted after an altercation with a coworker, Desiree (last name believed to be Johnson).

75. The incident took place in plain view of several other employees at Legends Foster.

76. On April 20, 2023, Plaintiff sent an email to Foster summarizing the encounter she had with her co-worker.

77.    Foster simply ignored the incident, forcing Plaintiff to continue working with a coworker who had almost physically assaulted her.

78.    In 2024, Plaintiff complained that her time was being "shaved," or she was not being paid properly for all hours worked or at the statutory over time rate for hours worked above 40 hours.

79.    Specifically, on May 1, 2023, Plaintiff complained to Foster as she lost one hour of pay per day for at least seventeen days straight.

80.    As a further example during the week of April 18, 2023, Plaintiff worked six days and but despite working her hours, was not paid for six hours during that period.

81.    Later, in or around August of 2025, Plaintiff was verbally attacked by the same co-worker who had attempted to physically assault her in April of 2023.

82.    A few days later, that co-worker's friend followed Plaintiff around the bar attempting to record her while she was tending to guests.

83.    While both of these incidents were once again reported by Plaintiff to Foster, no action was taken and the behavior remained largely unaddressed.

84.    Other employees who had not engaged in protected activity were not subjected to such hostile treatment.

85.    In or around June of 2024, Plaintiff was recorded by a woman during her entire shift.

86.    The incident was subsequently reported by Plaintiff to Foster, but no further action was taken.

87.    On or around July of 2024, Plaintiff sent an email to Shek informing him that the secret shoppers that had been frequenting the bar had been subjecting her to  increasingly

aggressive behavior.  In this email she also noted that she felt harassed.

88.    In or around August of 2025, Plaintiff realized that her classification on her paystubs had been changed to reflect "Concessions" instead of "Premium".

89.    Recognizing that such a change in classification may have led to an issue with her seniority status, Plaintiff complained, but once again she was simply brushed off.

90.    In or around August of 2025, Plaintiff realized that her pay stubs had been changed to reflect "Concessions" rather than "Premium," which would result in further loss of income and damages to Plaintiff.

91.    The retaliation as alleged herein has been continuous and Plaintiff suffered, and continues to suffer damages.

92.    Plaintiff was denied proper compensation and overtime, loss of opportunities for compensation she was entitled to based upon her seniority, such as working soccer games, playoff games, other events at Yankee Stadium, bonuses, overtime opportunities, other compensation.

E.    **Wage Theft Prevention Act Violations**

93.    Throughout their employment, Defendants did not keep and maintain accurate time records for the hours Plaintiff worked.

94.    Defendants also failed to provide Plaintiff with an acknowledgment of her pay rates or complete and accurate paystubs as required by the NYLL.

95.    Because Defendants did not provide Plaintiff with complete and accurate acknowledgments and paystubs, she was kept in the dark about how much she should have been paid.

96.    Had Defendants provided such acknowledgments and paystubs, Plaintiff would have known that she was entitled to compensation for hours she worked each week and tips she

was to receive, and could have advocated for herself to enforce her rights under federal, state and local laws.

97.    However, because Defendants did not provide Plaintiff with complete and accurate documentation as required by the NYLL, Plaintiff could not rectify the situation, resulting in the underpayment of her wages during their employment with Defendants.

98.    As a result of Defendants' failure to provide wage acknowledgments and statements, Plaintiff has incurred tangible, downstream harm.

99.    On the grounds of equitable tolling, the statute of limitations for all claims asserted by Plaintiff should be tolled due to the failure to provide appropriate and required notice of the law.

**COUNT ONE**
**(Failure to Pay Minimum Wages – FLSA)**

100.    Plaintiff realleges and incorporates by reference each and every allegation and statement contained in all preceding paragraphs of this Complaint as if fully set forth herein.

101.    The FLSA regulates the payment of wages by employers whose employees are "engaged in commerce or engaged in the production of goods for commerce, or [are] employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §207(a)(1).

102.    Defendants engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Complaint.

103.    Defendants were required to pay Plaintiffs at least the applicable minimum wage rates for all hours worked.

104.    Defendants failed to pay Plaintiffs the minimum wages to which they are entitled under the FLSA.

13

105.    Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional.

106.    Defendants were aware or should have been aware that the practices described in this Complaint were unlawful.

107.    Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs.

108.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

109.    As a result of Defendants' willful violations of the FLSA, Plaintiffs have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and is entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

## COUNT TWO
### (Failure to Pay Overtime Wages – FLSA)

110.    Plaintiff realleges and incorporates by reference each and every allegation and statement contained in all preceding paragraphs of this Complaint as if fully set forth herein.

111.    The FLSA requires that employers pay all employees at least one and one-half times the employee's wage for all hours worked in excess of forty (40) during any workweek, unless they are exempt from coverage.

112.    During their employment, Plaintiffs were non-exempt employees of Defendants.

113.    During their employment, Plaintiffs regularly worked overtime, without receiving any premium pay for hours worked in excess of forty (40) per workweek.

114.    At all relevant times, Defendants willfully, regularly, repeatedly, and knowingly failed to pay Plaintiffs the required overtime wages to which they are entitled.

14

115.    As a result of Defendants' willful violations of the FLSA, Plaintiffs have suffered damages by being denied overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**COUNT THREE**
**(Failure to Pay Minimum Wages – NYLL)**

116.    Plaintiff realleges and incorporates by reference each and every allegation and statement contained in all preceding paragraphs of this Complaint as if fully set forth herein.

117.    Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Complaint.

118.    At all times relevant, Plaintiffs were employees of Defendants, and Defendants were employers of Plaintiffs, within the meaning of the NYLL §§ 650 et seq., and the supporting New York State Department of Labor Regulations.

119.    Defendants failed to pay Plaintiffs the minimum hourly wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

120.    Pursuant to the NYLL, Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations, Defendants have been required to pay Plaintiffs the full minimum wage at a rate in New York State to the present, under the NYLL §§ 650 et seq. and the supporting New York State Department of Labor Regulations.

121.    Through their knowing or intentional failure to pay minimum hourly wages to Plaintiffs, Defendants willfully violated the NYLL, Article 19, §§650 et seq., and the supporting New York State Department of Labor Regulations.

122.    Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover from Defendants his unpaid minimum wages, liquidated damages as provided for by the

15

NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## COUNT FOUR
### (Failure to Pay Overtime Wages – NYLL)

123.    Plaintiff realleges and incorporates by reference each and every allegation and statement contained in all preceding paragraphs of this Complaint as if fully set forth herein.

124.    The NYLL requires that employers pay all employees at least one and one-half times the employees' wage for all hours worked in excess of forty (40) during any workweek, unless they are exempt from coverage.

125.    Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Complaint.

126.    At all times relevant, Plaintiffs have been non-exempt employees of Defendants, and Defendants have been employers of Plaintiffs, within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

127.    Defendants have failed to pay Plaintiffs the overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

128.    Pursuant to the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations, Defendants have been required to pay Plaintiffs the unpaid overtime wages to the present, under the NYLL §§ 650 *et seq.* and the supporting New York State Department of Labor Regulations.

129.    Through their knowing or intentional failure to pay overtime wages to Plaintiffs, Defendants willfully violated the NYLL, Article 19, §§650 *et seq.*, and the supporting New York State Department of Labor Regulations.

130.    Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the

16

NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## COUNT FIVE
### (Misappropriation of Tips – NYLL)

131.    Plaintiff realleges and incorporates by reference each and every allegation and statement contained in all preceding paragraphs of this Complaint as if fully set forth herein.

132.    Defendants unlawfully demanded or accepted, directly or indirectly, part of the gratuities received by Plaintiff in violation of NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations.

133.    Defendants unlawfully retained gratuities and/or administrative fees intended for Plaintiffs in violation of NYLL Article 6, § 196-d and the supporting New York State Department of Labor Regulations.

134.    Defendants unlawfully required Plaintiff to share the gratuities they received with employees other than tipped employees, in violation of NYLL Article 6, § 196-d and the supporting New York State Department of Labor Regulations.

135.    Due to Defendants' violations of the NYLL, and these unlawful practices, policies and procedures, Plaintiffs are entitled to recover from Defendants the value of the misappropriated gratuities, liquidated damages and reasonable attorneys' fees, costs, and prejudgment and post-judgment interest.

## COUNT SIX
### (Wage Notice Violations – NYLL)

136.    Plaintiff realleges and incorporates by reference each and every allegation and statement contained in all preceding paragraphs of this Complaint as if fully set forth herein.

137.    Defendants failed to furnish Plaintiff with wage notices as required by NYLL §195(1), in English or in the language identified by each employee as their primary language, at

17

the time of hiring and with any change in pay, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL §191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

138.    Due to Defendants' violations of NYLL §195(1), Plaintiff is entitled to statutory penalties of fifty dollars for each workday that Defendants failed to provide Plaintiff with proper wage notices, or a total of five thousand dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL §198(1-b).

### COUNT SEVEN
### (Wage Statement Violations – NYLL)

139.    Plaintiff realleges and incorporates by reference each and every allegation and statement contained in all preceding paragraphs of this Complaint as if fully set forth herein.

140.    Defendants failed to furnish Plaintiff with an accurate statement with every payment of wages as required by NYLL §195(3), listing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; and the number of regular and overtime hours worked.

141.    Due to Defendants' violations of NYLL §195(3), Plaintiff is entitled to statutory

penalties of two hundred fifty dollars for each workday that Defendants failed to provide Plaintiff with proper wage statements, or a total of five thousand dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL §198(1-d).

## COUNT EIGHT
### (Retaliation – NYLL)

142.    Plaintiff realleges and incorporates by reference each and every allegation and statement contained in all preceding paragraphs of this Complaint as if fully set forth herein.

143.    NYLL § 215 provides, in pertinent part: "No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint…that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter…"

144.    As set forth herein, Plaintiff made several complaints regarding Defendants' refusal to address shortfalls regarding her seniority status, inaccurate hourly pay rate, cascading into inaccurate overtime pay rate, payment of annual "attendance bonuses, and non-offering 401K benefits programs.

145.    These were complaints which Plaintiff reasonably and in good faith believed violated NYLL §§ 740, 741, which provides that an employee is protected from retaliatory actions by the employer after complaints are lodges by the employee.

146.    Defendants retaliated against Plaintiff due to her protected activities by non-payment of negotiated hour rates, demotion of her seniority status which affected her pay, denial of payment of proper annual "attendance" bonuses, and potential assignments of "secret shoppers" to monitor her in a harassing manner.

147.    As such, Plaintiff is entitled to all appropriate relief, including but not limited to, lost compensation, liquidated damages, compensatory damages,  offering to Legends 401K plan, pain and suffering, costs and attorneys' fees.

## COUNT NINE
### (Retaliation – FLSA)

148.    Plaintiff realleges and incorporates by reference each and every allegation and statement contained in all preceding paragraphs of this Complaint as if fully set forth herein.

149.    Defendants retaliated against Plaintiff by commencing retaliatory actions soon after they complained about non-payment of wages, overtime compensation and unlawful activities.

150.    The unlawful conduct resulted in loss of income to Plaintiff.

151.    Defendants' actions constitute unlawful retaliation, and if countenanced, such actions would have a chilling effect on the assertion by employees of their federal rights under the FLSA.

152.    Defendants' actions constitute a violation of Section 15(a)(3) of the FLSA. 29 U.S.C. § 215(a)(3).

153.    Plaintiff suffered economic damages as a result of Defendants' retaliatory and unlawful conduct.

154.    Due to Defendants' retaliation under the FLSA, Plaintiff is entitled to recover from Defendants compensatory damages and punitive damages for Defendants' willful disregard for Plaintiffs' rights. Further, Plaintiff is entitled to attorneys' fees, costs, interest, and such further relief as the court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and claims with respect to which she has a right to a jury trial.

**BCL §630 / LLCL §609 NOTICE AND DEMAND**

Pursuant to New York Business Corporation Law ("BCL") §630 and/or New York Limited Liability Company Law ("LLCL") §609, Plaintiff hereby advises that she intend to hold Legends' top ten shareholders and/or members liable for the unpaid wages referenced herein. Further, Plaintiff demands that Legends permit an examination of their record of shareholders under BCL §624 so that liability may be imposed on its top ten shareholders for the unpaid wages referenced herein.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for relief as follows:

A.    Declaring that Defendants violated the FLSA and NYLL by failing to pay Plaintiff her proper wages and failing to provide her with proper documentation as required under the law;

B.    Awarding Plaintiff the amount of unpaid wages under the FLSA and/or the NYLL, including unpaid minimum wages, overtime wages and misappropriated tips;

C.    Awarding Plaintiff liquidated damages in an amount equal to wages owed pursuant to 29 U.S.C. §216(b) and liquidated damages and other statutory remedies pursuant to the NYLL;

D.    Awarding pre- and post-judgment interest as permitted under the law;

E.    Awarding the costs of this action together with reasonable attorneys' fees; and

F.    Granting such other and further relief as this Court deems necessary and proper.

21

Dated: July 20, 2026
Syosset, New York

Respectfully submitted,
**LAW OFFICES OF YALE POLLACK, P.C.**

By: _____
Yale Pollack, Esq.
66 Split Rock Road
Syosset, New York 11791
(516) 634-6340
ypollack@yalepollacklaw.com
*Attorneys for Plaintiff*

22